TRUESDELL v. L. S. & D. B. CALLAWAY.

1. A person cannot acquire a lien upon land purchased by another, by the voluntary and unauthorized payment of the purchase money, as one man cannot make another his debtor by paying money for him, without being requested so to do by the latter.

2. A person who takes a conveyance of land with notice of the legal or equitable title of another to the same land will be held a trustee for the benefit of the other, and will not be permitted to avail himself of the statute of frauds, on the ground that the agreement under which he took the conveyance was not in writing.

SEPT TERM.
1840.

Truesdell
v
L.ᵗ S. and D.
B. Callaway,

| 6   | 605 |
|-----|-----|
| 115 | 640 |

Appeal in chancery from the Gasconade circuit court.

*Frissell for Appellant.*

1st. That a party to a bill for specific performance may admit a verbal contract to convey and still insist upon the statute of frauds as a bar to the performance. Rowe vs Teed 15 Vis. C. R. 371.

2d. That the statute in this case presents a complete bar to the prayer of the bill for a specific performance, there being no contract, other than verbal, between Truesdell and McCoy, or his assignees, the Callaway's. Leman vs Whilby 3 Cond. Eng. Ch. Rep. 736, Bacon's Ab'r. 120.

3rd. That the purchase money not having been paid to Pritchett, neither at the day or any other time, Pritchett might rightfully sell the land to another, and the purchaser would hold the land divested of any equity that McCoy or his assignees might have had against Pritchett. Hatch vs. Cobb, 4 J. C. Rep. 559. Kempsal vs. Stone, 5 J. C. R. 193.

4th, That time in this instance did constitute a part of the essence of the contract between McCoy and Pritchett, the value of the property contracted to be sold being constantly changing. Dolout vs. Rothschild 1 E. C. Rep. 302. Parker vs. Frith do. 100. Benedict vs Lynch 1 J. C. R. 369. Newland on Contracts, 224.

5th. That until the purchase money had been paid, or tendered, neither McCoy or Callaway could ask for a conveyance either from Pritchett or Truesdell in a court of equity, payment being by the contract a condition precedent.

6th. There being no allegations in the bill that McCoy had paid the purchase money to Truesdell, but there being an allegation that the same had been paid by McCoy to

Pritchett, and the proof being clear that Truesdell had paid the purchase money to Pritchett, and there being no proof that McCoy had done so, the court erred in founding its decree upon the assumption that McCoy had paid the said money to Truesdell- 2 Maddox Chan. 438.

7th. That even admiitting that the money had been paid, a court of equity could not decree a performance to be made by Truesdell for the want both of privity and mutuality.— Newland on Contracts, 152–3. 1 Chitty, see practice 827–8.

8th. If McCoy or his assigneess have any remedy, notwithstanding their laches, it would be at law and against Pritchett. Hatch vs. Cobb, 4 J. C. Rep. 559.

9th. No proof could be legally admitted of any matter not at issue between the parties, and the matter of the payment by McCoy to Truesdell of the purchase money not being at issue, all proof tending to prove such payment must be excluded. 2 Maddox 438.

### Brickey for Appellees.

1. That Truesdell acquired the title to the land in question as trustee, and as such was bound to convey to McCoy or his grantees the present complainants. If a man purchase land in the name of another and pays the money, it will be trust for him that paid the money, though there be no deed declaring the trust, for the statute of frauds does not extend to *trusts* raised by operation of law. A resulting trust, or trust by operation of law, remains as at common law, and susceptible of parol proof. 7 Bac. Abr. 142, letter c. and authorities there cited. 1 Johns cases 153, (Jackson vs Sternberg,) 3 Johns Reps. 216, (Foot vs. Colvin.)

2nd. The parties having submitted this cause to the decision of the Judge as Chancellor, cannot now make objection to his decision. Therefore there is no error in the record or proceedings of the court below, and this court will affirm the decree of complainants.

### Cole for Appellees.

1st. Truesdell obtained the title to McCoy's land mala fide, by false suggestions and a suppression of the truth, when there is fraud trust arises. 1 Cranch on real property, 485.

2nd. When the title was obtained from Caldwell, Truesdell made a public declaration of the trust to McCoy and that he had notice of McCoys title.

3rd. That there is a trust created by operation of law in favor of McCoy or his assignees. 11 Johns Rep. 95. 2 Story's Equity 438. 2 Fonb. Equity 116. Sugden on vendors 443 and 527.

4th. The plea of the statute of frauds cannot avail defendant, under the facts and circumstances of this case. Story's Equity, 16, 441. 1 Cranch on real property 471.

5th. The defence in the answer, which alleges a contract of McCoy about a 60 feet way, is not proved, is without consideration, is wholly indefinite, void and against law.— When matters are set up in avoidance they must be proved. 2 Madd. ch'y 446, (Green vs. Hart,) 1 John Rep. 589.

6th. The defence in the answer which alledges the payment of a sum of money by Truesdell to Pritchett for McCoy cannot create an equity in behalf of Truesdell; because

1st. Truesdell paid the money to Pritchett without being requested to do so by McCoy.

2nd. The relation of vendor and purchasor does not exist between Truesdell and McCoy, and the complainants are not bound by the transaction, and are purchasers without notice.

3rd. Truesdell obtained the legal title to McCoy's land fraudulently and no equity can arise to him under the circumstances.

4th. From the facts of the case if Truesdell did ever pay money he must have been repaid.

5th. From the facts of the case Truesdell never did pay the money to Pritchett alledged in his answer and the allegation in this particular, as well as many others connected with it, are not proved. McKnight et al vs. Bright, 2 M. R. 110. Marsh vs. Turner et al, 4 Mo. Rep. 253.

7th. There is no error in the Chancellor in disregarding the issues in the cause, nor on finding the money repaid to Truesdell nor in the decree by him rendered in the cause.

*Opinion of the Court by Tompkins Judge.*
Judge McGirk absent during the remainder of the present term.

SEPT. TERM.
1840.

Truesdell
v
L. S. and D. Callaway,

SEPT. TERM
1840.

Truesdell
v.
L S. and D.
B. Callaway,
Larkin S. Callaway and Daniel B. Callaway preferred their bill of complaint in the circuit court of Franklin county against William Truesdell, the appellant, and one Jesse Pritchett. The cause was transferred to the circuit court of Gasconade county, where a decree being made against Pritchett, for want of an answer, and against Truesdell, on a hearing, he appeals to this court.

The complainants in their bill state that they are the purchasers of a tract of land lying in said county of Franklin. That said tract of land was originally the property of one John Caldwell, who sold it, along with other land thereto adjoining, to said Pritchett, who sold the same to the defendant, Truesdell, to one William G. Owens, and to one Joseph McCoy, in separate parcels, giving to each a bond for a title to his respective part, whenever said Caldwell should make to said Pritchett a title to said tract of land; that the complainants purchased the interest of said McCoy; that Pritchett, when he sold the land, as aforesaid, to said Truesdell, Owens, and McCoy, put each of them into the possession of his respective parcel of land; that Pritchett had paid Caldwell for said land; and that Truesdell, Owens, and McCoy, had each paid Pritchet for the portion which each had respectively purchased from him, and each was entitled to a deed for his land, that is to say, Pritchett to a deed from Caldwell, and Truesdell, Owens and McCoy, from Pritchett. That when said Truesdell and Owens applied to Pritchett to make them a deed, by agreement among themselves, Pritchett surrendered to Caldwell his bond for the title to said land, and Caldwell, in consideration thereof, did convey the said land to Truesdell, and that Truesdell in consideration thereof undertook to convey to Owens and McCoy, respectively, their several portions of said tract of land, according to the effect of the bonds executed to them respectively, by Pritchett; that in some short time thereafter Truesdell informed McCoy of this arrangement, and requested him to pass the title bond made to him by Pritchett over to William G. Owens, in order to have a deed drawn agreeably to the terms of the bond, and that he Truesdell would execute it; that McCoy accordingly did deliver the title bond to said

Owens, who wrote the deed and delivered it to McCoy, but retained the bond; and that McCoy presented the deed to Truesdell for execution, and he refused to do it, but said he would execute any deed which would bind said McCoy and his heirs to keep open a way, sixty feet wide, through said land, on the bank of the Missouri river; that McCoy told Truesdell that his bond called for the Missouri river as a boundary, and that if he did not execute the deed as drawn up by Owens, he would resort to Pritchett on his bond; that Truesdell then told McCoy he had no bond, alluding to the fraudulent collusion betwixt Truesdell and Owens, by which said bond was retained in the possession of Owens, and McCoy kept out of his title. The bill further charges Truesdell with the act of procuring the deed for this land to be made by Caldwell to himself with intent to defraud McCoy; and further states, that neither McCoy nor the complainants have ever been able to recover the bond from Owens, and that they believe it is withheld by the contrivance of Truesdell; that said Owens is dead, and McCoy gone to parts unknown to the complainants; that they are unable to give the dates of the several transactions above stated, all of which are stated to be within the knowledge of Truesdell, and to have transpired within a few years. The boundaries of the land are there set out in the bill conformably, as is said, to the provisions in Pritchett's bond to McCoy. The bill prays a decree for a conveyance of the premises, and that Truesdell may be restrained from proceeding in ejectment against the complainants.

To this bill Truesdell pleads the statute of frauds; and answering says, that he did purchase of Pritchett a tract of land on the Missouri river, in Franklin county aforesaid, in the year 1832, the legal title of which he understood when he purchased to be in one John Caldwell; that Pritchett at the time made him his bond for a title, to be made so soon as he could get a title made to him by Caldwell; that the said bond was some years ago delivered up to said Pritchett, and he cannot be positive as to the wording thereof, but believes the above to be substantially correct; that some short time after said purchase he paid Pritchett the purchase mo-

ney, and demanded a deed for the land. Pritchett answered
that the legal title to the land was in Caldwell, who was
bound to make him a deed. Pritchett then assigned to him
his bond on said Caldwell for a tract of land including that pur-
chased by him, Truesdell, from said Pritchett; that he under-
stood at the time of the assignment of the said bond, and some-
time before that one Wm. G. Owens and Joseph McCoy, had
purchased or contracted to purchase from said Pritchett, the
residue of the tract of land mentioned in said bond, which
said Pritchett held on said Caldwell, after deducting the
quantity purchased by him Truesdell, from Pritchett as
aforesaid; that Caldwell did convey said land to him, and
that he did say in the presence of Caldwell that he would
convey to the said Owens and McCoy whatever portions of
said land they were entitled to. The land conveyed is there
set out by metes and bounds. The deed was made by Cald-
well on the 25th day of February, 1833. He then states
that shortly afterwards said Owens presented to him a deed
to be executed by him; that he refused to execute the deed
so presented by Owens, unless there should be inserted in
said deed a covenant to keep open a way sixty feet wide
along the Missouri river; and that he mentioned to said
Owens, that the understanding between himself and said
Owens and McCoy was that there was always to be an
open way, sixty feet wide, on the Missouri river, on the
land conveyed by said Caldwell to the said Truesdell as
aforesaid. That said Owens then said such was the under-
standing, and that he would draw another deed and insert a
covenant to keep open a way sixty feet wide on his portion
of the land; that said Owens accordingly drew up another
deed, inserting such covenant, which said deed said Truesdell
executed. This deed he states was for about three acres. and
executed on the 5th August, 1833, or thereabout; that he
called on Pritchett to pay him for the land he had purchased;
that before he called on Pritchett as aforesaid, said McCoy
called on him, and mentioned to him that Pritchett held his
note for his share of the land purchased by him from Pritch-
ett, and that said note was due, and that said Pritchett was
anxious for the payment of such note, and requested him to

ask Pritchett to take in part payment therefor a note on one Bryant for the sum of one hundred dollars; he then called on said Pritchett, and having settled his own business made Pritchett the offer of Bryant's note as McCoy had requested; that Pritchett refused to take it, and said if McCoy could not pay him he would take the land back. and that he, out of frienship for McCoy, paid Pritchett for him the sum of one hundred and twenty-five dollars principal, and seven dollars and thirty cents interest, that being the amount of the purchase money of McCoy's interest in the land; that he then took from Pritchett the note of the said McCoy for the money above mentioned, paid by him as aforesaid to said Pritchett, and called on the said McCoy and gave him the said note; that said McCoy then expressed his thanks to the defendant, Truesdell, for his friendship to him in paying said note, and requested him to reimburse himself in part by collecting from Bryant the amount of the note on said Bryant, handed to the defendant by said McCoy as aforesaid; that he Truesdell shortly afterwards called on said Bryant for the payment of said note, and he not being able to pay it, Truesdell returned it to McCoy, and that McCoy told him that he would soon make collections and pay him the amount paid by him to Pritchett; that at the time of these transactions; he had the most implicit confidence in the integrity of McCoy, and made use of no precautions to guard against any breach of good faith on the part of McCoy. All these matters were transacted some time previous to the execution of the deed from said Caldwell to him, Truesdell, and he further states, that he offered to execute to said McCoy a deed for his part of said tract of land, and to trust McCoy for the amount he owed him on account of money paid by him to Pritchett, as aforesaid, if McCoy could insert in the deed a covenant to keep open a way sixty feet wide on the Missouri river, through his part of the land, agreeably to the understanding between said Owens, McCoy and the defendant, Truesdell; that McCoy not acceding to this proposal, he refused to execute the deed; that then to his astonishment McCoy denied that he owed him any thing, and declared that he would get a title to the land out of him *any*

how, thus betraying the confidence reposed in him for the payment of the sum of money which Truesdell, as he alleges, had paid to Pritchett for him; that McCoy had not yet repaid him the said sum of money.

The answer further denies all fraudulent combinations for the purpose of defrauding McCoy; and alleges that in good faith he acquired the title with intention to convey to McCoy whatever interest he might be entitled to in the land conveyed to the defendant by Caldwell, and that he is still willing to do so when McCoy shall repay to him the above mentioned sum of one hundred and twenty-five dollars principal, and seven dollars thirty seven and a half cents interest, paid by him as aforesaid to Pritchett for McCoy. The answer also denies all combination with Owens, and all other persons to secrete the bond made by Pritchett to McCoy for a title to the land, or that he, Truesdell, knows any thing of said bond or of its contents, and asserts that the agreement betwixt McCoy, Owens, and the defendant, Truesdell, was to take deeds from the defendant for their parts of said tracts of land, with a reservation of sixty feet on the Missouri river as an open way; and denies that he ever told any one that he withheld the execution of said deed from McCoy in order to make him relinquish a part of said land on the Missouri river.

The statute of frauds is again insisted on in the answer.

The complainants on their part gave in evidence a quit claim deed from McCoy for the premises.

John Caldwell, a witness for the complainants, testified, that he did convey a piece of land in Franklin county at a place called Washington, to William Truesdell, and that he understood from William Truesdell that Joseph McCoy had a claim on part of the land so conveyed by him, and that he was to convey the same to said McCoy agreeably to the conditional lines; that the land was so conveyed because they, Truesdell, Pritchett and McCoy, concluded that he, Caldwell, would not wish to make so many conveyances, as he understood from William Truesdell. The witness also stated that, to the best of his recollection, he understood from Pritchett that McCoy had paid a part or all for the land to

SEPT. TERM
1840.

Truesdell
v.
L. S. and D.
B. Callaway.

said Pritchett, he then stated the boundaries of McCoy's claim about which, as there is no contention, it is useless to notice it further.

The witness being interrogated by Truesdell the defendant, stated that when Truesdell came to him for a conveyance he brought with him a bond on Pritchett, assigned to him the said Truesdall, for a tract of land which he Caldwell had sold to said Pritchett on the Missouri river, some months previous to the time he, Caldwell, deeded to Truesdell, (the punctuation and language of the bill of exceptions are obscure.) It is probable the witness said that when Truesdell came to get a deed executed that he brought along with him the bond made by Caldwell to Pritchett for a title to said land, and that this bond was assigned by Pritchett to Truesdell.

The wife of the witness Caldwell also gave evidence and testified, that Truesdell admitted his obligation to convey to McCoy, whose improvements were contained within the tract conveyed by her husband. The same witness stated, that Pritchett was owing her a trifle, and said he could not pay until he could see McCoy, who he said was owing him, and that he said as soon as he could go and see McCoy he wanted to pay her, and also to purchase a black girl: that when he went and saw McCoy, he sent for her to come and get her pay, and also bought a negro.

Otis Turner, another witness on the part of the complainants, testified, that some time in the month of September or October 1833, he was present at a settlement betwixt McCoy and Truesdell; that Truesdell had sent for McCoy to come to his house and bring with him all his papers, as he, Truesdell wished to have a final settlement with said McCoy; that McCoy came and brought his papers, and among them some notes on Truesdell, that he was present at the settlement, and that there appeared to be a question concerning some money which McCoy had paid Truesdell, which McCoy said could go in payment for a piece of land purchased from one William Miller, which Truesdell appeared not to understand, but at last admitted and settled in that way. This witness further testified, that he did not un-

derstand that Truesdell had made any payment towards lands for McCoy, except what he *heard* paid Miller. But there appeared to be seven dollars due Pritchett for interest, which McCoy said he had paid, but would pay again, and did pay the same to Truesdell afterwards. This witness also stated that he heard a deed read, which Truesdell had written to *assign*, (sign) for McCoy, that McCoy refused to take it because it did not call for the waters edge, which McCoy said was his contract. That McCoy said he was willing to enter into a bond to leave a way sixty feet wide on the river, or more, if Truesdell and Owens would do the same, but that he wished the deed to call for the waters edge agreeably to contract: that at the time Truesdell offered to make McCoy this deed, he did not demand of McCoy any money as payment for this land. This witness also testified as to the boundary of McCoy's claim. At this settlement the witness states that Truesdell gave McCoy his note for about nineteen dollars, errors, and omissions excepted, at this settlement it was agreed that Truesdell should keep, for the interest due Pritchett, a gun of McCoy's which he had; this interest was about seven dollars, they could not ascertain exactly how much it was: that he heard no mention of land matters being due either way.

The same witness, on cross examination, stated, that he did not recollect of a receipt being brought forward on the day of the settlement, given Truesdell by Pritchett, for money paid him by Truesdell, amounting to $125,00 principal, and thirty-seven and a half cents interest, which should have *been* paid Pritchett for McCoy by the said Truesdell, and that Truesdell *lifted* papers from McCoy, but does not recollect of McCoy *lifting* any from Truesdell at the above mentioned settlement.

Joseph McCoy testified that on or about the 1st of February, 1832, he purchased from Jesse Pritchett a tract of land lying on the Missouri river, containing about thirty-six acres; that he took Pritchett's bond for a title to the same, and gave Pritchett his obligation for the payment of the price.— Shortly afterwards, the witness states, that he paid Pritchett for this land, and took in his bond. About the same time

that the witness purchased he states that Truesdell also pur-SEPT. TERM.
chased from Pritchett about one hundred and eighty acres, 1840.
a part of the same tract, and he also took Pritchett's bond Truesdell
for a title, as also did William G. Owens.  It was called the L. S. and D.
Caldwell tract, because one Caldwell was the original own-B. Callaway.
er and had sold to Pritchett.  Caldwell had not yet made
Pritchett a title to this land, when the witness, the said
Truesdell and Owens, purchased: he further states that some
short time after he had paid Pritchett for this land, Trues-
dell come to his house and told him that Caldwell had by
consent of Pritchett and Owens conveyed to him the tract
of land which Pritchett had bought of Caldwell, and also in
parcels to the witness Owens and Truesdell, and that he
Truesdell had undertaken to convey to the witness his part,
and told him if he would give Pritchett's title bond to Ow-
ens to write a deed by, he would execute such deed at any
time; that the witness delivered Pritchett's bond to Owens,
and that Owens wrote the deed, which the witness presen-
ted to Truesdell who refused to execute it; Owens retained
the title bond; Truesdell refused to execute the deed unless
the witness would convey sixty feet in breadth on the river,
through his tract of land lying on the river for the benefit of
him Truesdell and Owens, for a landing and public highway.
This the witness refused to do, but offered to leave a road if
Truesdell and Owens would do the same.  Truesdell did not
agree to this proposal.  The witness stated that he held
Pritchett's bond for a deed, and would look to him for a ti-
tle; that Truesdell then told the witness he had no bond,
and that if he did not convey this sixty feet for the benefit
of him and Owens he would never make a deed to the wit-
ness; that he then demanded his bond from Owens, who
told him he had delivered it to Pritchett, and when he de-
manded it from Pritchett he told him he had burnt it.  The
witness then describes the land, and states his sale to the two
Callaways.  He denies that he ever did owe Truesdell any
thing, and declares that at the very time that Truesdell refu-
sed to make the deed, he and Truesdell had a final settlement,
and that Truesdell *lifted* his notes with the exception of
$19,75 for which he gave his note to the witness.  This set-
P 2

tlement, he states, was made by O. Turner of Franklin county. After the settlement was made, Truesdell said he had paid seven dollars and some cents interest for the witness, and the witness recollecting that he had sold Truesdell a gun for eight dollars, this sum was by consent set off against the other; the witness denies that after the above mentioned settlement he has ever had any dealings with Truesdell.

It was agreed between the parties that the following facts should be evidence in the cause, viz: that a settlement of accounts between the parties took place on the 20th July 1833, and that Truesdell executed his note to McCoy for about $19, this is the same settlement mentioned in Turner's deposition, that this note was afterwards sued on, and that Truesdell gave in evidence several items as an off set and had judgment for eight dollars.

The defendant Truesdell then gave in evidence on his part a paper purporting to be a receipt from Jesse Pritchett to said Truesdell for $125 principal, and $7,31 cents interest, dated 5th August 1832, which sum was received on a note held by me on Joseph McCoy, the said note having been given me for land sold to said McCoy on the river, in Franklin county, which land adjoins the land of the above named William Truesdell and W. G. Owens: this receipt purports to be signed by Pritchett.

Nathaniel Bell, a witness on the part of the defendant, testified that in a conversation betwixt himself and said McCoy in the subject of the sale of this property to Daniel B. and Larkin S. Callaway, he asked McCoy what he would do concerning the river part that William Truesdell claimed, and that McCoy answered that he was to give them three hundred dollars in property, viz: in hogs, cattle, corn, wheat, and household furniture, &c., to pay said Truesdell for the above mentioned land, and that they might get the title from the said Truesdell in any way they could, that he did not care if the Callaways got the title for fifty dollars.

Daniel Waldo on the part of the defendant, testified that in August or September 1832 he saw William Truesdell pay a note which said Pritchett held on Joseph McCoy, this

note was for upwards of one hundred dollars and was given for a tract of land described as the land in controversy, that the payment was made at the house of Pritchett, that McCoy then lived in St. Louis county, and he heard Pritchett say that McCoy had disappointed him and he would be glad to take the land back.

The defendant having produced seven witnesses to prove that McCoy was not to be believed on his oath, closed his case.

On this testimony the circuit court found that McCoy had repaid to Truesdell the money which he had paid to Pritchett for him, and decreed that Truesdell be enjoined from proceeding in his action of ejectment against the complainants, and also decreed that he should convey to them that part of the land conveyed to him by Caldwell, which Pritchett had by his bond covenanted to convey to McCoy.

These were the points substantially made by the defendants counsel.

1st. That the purchase money not having been paid by McCoy to Pritchett, either on the day it became due or at any other time, Pritchett might lawfully sell the land to another, and the purchaser would hold it divested of any equity which McCoy, or his assignee's might have against Pritchett.

2nd. That the statute of frauds is a complete bar to the prayer of the bill for a specific performance, there being no contract other than verbal betwixt Truesdell and McCoy or his assignees, the complainants in this bill.

The evidence on the part of the appellant, Truesdell, that he paid the consideration for this land in controversy is the receipt of Pritchett for the money, and the testimony of Waldo that he saw Truesdell in August 1832, pay to Pritchett, at the house of Pritchett, this note of McCoy made by him to Pritchett. This is of so equivocal a character, that it scarcely deserves consideration. In the first place there is not the slightest evidence that McCoy ever requested him to pay it, or that he even ever promised after the pretended payment to repay Truesdell this money, which, if it ever were paid by him to Pritchett, he could not recover even in an ac-

SEPT. TERM
1840.

Truesdell
v
L. S. and D.
B. Callaway,

A person
cannot ac-
quire a lien
upon land
purchased by
another, by
the volunta-
ry and unau-
thorized pay-
ment of the
purchase mo-
ney, as one
man cannot
make another
his debtor by
paying money
for him, with-
out being re-
quested so to
do by the lat-
ter.

tion of assumpsit, without such promise. It is well settled law
that one man cannot make another his debtor, by paying.
money for him, without being requested to do it. For, say
all the books, if this were permitted, and A owed a sum of
money to a friend, and an enemy chose to pay that debt the
latter, (the enemy,) might convert himself into A's creditor,
nolens volens, see Selwin's nisi prius, title. assumpsit; and the
authorities there cited.

But the acts proved to have been done, are such very slight
evidence of payment, that they scarcely deserve con-
sideration. It certainly was no very difficult matter for
Pritchett to write Truesdell a receipt for the money McCoy
owed him, and as little trouble for Truesdell to count out to
Pritchett in Waldo's presence the amount of the principal
and interest due on McCoy's note. There is not the slight-
est evidence that this receipt ever came to the hands of
McCoy. And the only evidence that the note ever came
into his hands is the declaration of Truesdell himself, which.
it cannot surely be pretended ought to be listened to in a
court house, not being given in answer to any matter stated
in the bill. It is quite incredible that any man who is suffer-
ed to be his own guardian would be so silly, had he paid this
money as Truesdell pretends to have done, as to content
himself with such equivocal evidence of the fact, as a receipt
of Pritchett. It makes the matter appear worse, too, that
Pritchett, the only person capable of explaining these equiv-
ocal acts, was made a party to this bill, and has not answer-
ed, and denied the payment by McCoy. But John Cald-
well states in his deposition, that to the best of his recollec-
tion Pritchett told him that McCoy had paid " a part or all'
for the land to said Pritchett." Polly Caldwell, the wife
of John Caldwell, vendor of this land, also states circum-
stances strongly conducing to prove the payment to Pritch-
ett by McCoy of all his demand. She said that Pritchett
owed her a trifle and could not pay her till he saw McCoy,.
and that he said as soon as he could go and see McCoy he
wanted to pay her and to buy a black girl; and when he went
and saw McCoy he sent for her, and paid her, and bought
a negro. But if it were established as a certainty that this.

money had been paid by Truesdell to Pritchett, still the evidence of Turner is sufficient to raise the presumption that it had been repaid to Truesdell before the institution of this suit, or before that settlement. Turner states that the settlement took place in October 1833. It is admitted on record that this settlement took place in July 1833, and that Truesdell then executed his note to McCoy for $19 00. This settlement, Turner States, was denied by Truesdell to be final; that McCoy produced several of Truesdell's notes, which he Truesdell *lifted*, as the witnesses expresses it. In several places I have copied the testimony · as I found it, not being very certain whether I could render the meaning in more intelligible language, or whether even I understood it. But Turner says that on that day, though he appears to have acted as accountant, he *did not* learn that Truesdell made any payment towards lands for McCoy, except what he *heard* paid to Miller; and this was the day on which Truesdell tendered the deed too.

But on the cross examination by Truesdell, Turner tells " that he does not recollect of a receipt being brought for- " ward on the day of the settlement, given Truesdell by " Pritchett for money paid him by Truesdell, amounting to " one hundred and twenty-five dollars principal, and seven " dollars and thirty-seven and a half cents interest, which " should have been paid Pritchett for McCoy by the said " Truesdell." This is a literal copy, made so lest injustice should be done the defendant. This receipt must be that spread upon the record by the defendant, appellant here, as evidence that he had paid this money to Pritchett for McCoy. It can hardly be conceived to be possible that he who had called on McCoy for a final settlement on that day when the title to the land was to have been made, and when McCoy refused the deed, could have forgotten so large an item in his account. He might by possibility have been simple enough to have given, as he pretends in his answer, the note over to McCoy, and to have reserved this receipt as evidence of what he pretends to have paid for McCoy. But on such an occasion, when he fell in debt too to McCoy, this receipt could not have been forgotten. The conclusion then to

SEPT. TERM 1840.

Truesdell
v.
L. S. and D.
B. Callaway.

which I am irresistibly drawn is this—that if he then had that receipt, he was ashamed to produce such evidence; and that it would not have been produced here but for the hope that in the mass of rubbish with which this record is loaded, it would pass without scrutiny. But the dates sufficiently show that he had no such receipt at the time, frivolous and cheap as the evidence is. By the agreed evidence spread on the record the parties have fixed the date of this settlement to the 20th July 1833, and Turner too in the latter part of his deposition fixes the date to the same point of time; and Waldo, who testified to the gratuitous payment of McCoy's note, states that it was in the month of August or September that he saw the alleged payment made. The receipt then was an afterthought. Indeed the pretended receipt is dated on the 5th day of August. With this testimony before it, the circuit court, as it appears to me, must have been very charitable to Truesdell to find only that McCoy had repaid him what he had paid to Pritchett for him. The testimony was in my opinion amply sufficient to justify that court in finding that Truesdell did not pay any thing to Pritchett for McCoy. In his answer, too, Truesdell fixes the date of this payment pretended to be made to Pritchett on the 5th day August, when sixteen days before he had made a deed to Owens under this conveyance from Caldwell, and had tendered one to McCoy on condition of McCoy's leaving in him the title to sixty feet of ground on the river. No difficulties were then raised either by him or Pritchett, because McCoy had not paid, nor had Truesdell yet extended his friendship to McCoy. Pritchett might well be ashamed to answer such a bill if he had executed the receipt purporting to be made by him. But admit that Truesdell paid this money as he states, out of friendship, and that McCoy afterwards recognized the act as his own, and promised to pay (of which there is no evidence, but the gratuitous declaration of Truesdell, which his counsel seem to have regarded as testimony in the cause,) he gains nothing by it here. The act gives him no lien on the land; nor could he in such case make it a lien but by making out a proper case in a bill filed for such purpose.

He says, in the second place, that this promise to convey to McCoy was verbal, and relies on the statute of frauds. It does not appear in evidence that the bond of Pritchett to McCoy was recorded, but Truesdell had actual notice of it, and by the 31st and 32d section of the act to regulate conveyances of land, found on page 123 of the digest of 1835; that is sufficient to divest him of all pretensions to any right either in law or equity. But the justice of mankind has stamped such acts with disgrace before the statute was made. See Story's Equity Jurisprudence, vol. 1st, page 383, section 395. But without resorting to the evidence of McCoy at all, who declares that he paid the purchase money to Pritchett, the testimony of John Caldwell and his wife raise a very strong presumption that McCoy had paid Pritchett the purchase money. If any further evidence were required as against Truesdell, his unadvised and gratuitous declarations made in his answer, so inconsistent with the date of his receipt, would furnish that evidence. But Pritchett, it is evident admitted that he had received pay; he admitted it by his act in directing Caldwell to convey to Truesdell, that he might convey to McCoy; and Truesdell, when on 20th July 1833, he made a deed to Owens, and tendered one to McCoy, admitted that he had no authority from Pritchett to withhold the title from McCoy. His own answer, the date of his receipt, and Waldo's testimony, all show that it was not till the 5th August that he thought of retaining the title of this land, under pretence that McCoy had not paid Pritchett. But Pritchett, by failing to answer this bill, has admitted that he has received the price of his land, and it is difficult for me to conceive how Truesdell becomes authorized to complain of McCoy's tardiness in paying him. He does not pretend that he purchased the bond of Caldwell from Pritchett; but only that as agent for McCoy he paid Pritchett McCoy's debt. In every view I have taken of the subject, the decree of the circuit court is in my opinion correct.

1st, If Truesdell paid the money, and it has not been repaid, he has thereby acquired no lien on the land, and has even lost his money, unless he can prove either a previous request by McCoy, or a subsequent promise to pay.

SEPT TERM.
1840.

Truesdell
v.
L. S. and D.
B. Callaway,

A person who takes a conveyance of land with notice of the legal or equitable title of another to the same land will be held a trustee for the benefit of the other, and will not be permitted to avail himself of the statute of frauds, on the ground that the agreement under which he took the conveyance was not in writing.

2d. If he had paid at the time he pretended before Cald-well was directed by Pretchett to convey to him for the purpose of conveying to McCoy the settlement in Turners presence shows that he was then indebt to McCoy, and consequently that the money must have been repaid as the circuit court found. If he paid the money after Caldwell conveyed to him, the act was unauthorised and unnecessary, as admitted by the acts both of Pritchett and of Truesdell himself; for on the 25th day of February 1833 he says Cald-well conveyed to him by order of Pritchett and he acknowl-edged his obligation to them to convey to McCoy by Pritch-etts order, and in pursuance of that admitted duty on the 20th day of July of that year he tendered a deed to McCoy; and it was not till the 5th of August then next that the pretence was found for retaining in himself the title]to McCoy's portion of the land. This in my opinion amounts to a plain proof that there was no truth in the charge that McCoy had not paid Pritchell, and if he had not paid him, it was no part of Truesdells duty to withhold his title to the land.

But some reliance it seems in the argument of the cause was had on the testimony of the witness introduced to establish an admission on the part of McCoy that Truesdell, had paid Pritchett for McCoys land. This testimony has been before stated in part. He says that some time in the last of April or first of May 1835 McCoy sent for him (told him,) that he had sold the land to the Callaways provided they could raise the money, that in case they could not. he promised the witness to let him have it; the price was according to him $1500. The witness then asked him what he would do about the river part that William Truesdell claimed, and McCoy informed him that he was to give the Callaways three hundred dollars in property viz: hogs, cattle, corn, wheat, household furniture &c. &c., to pay the said William Truesdell for the above mentioned land, and that they might get the title from Truesdell in any way they could, and that he McCoy did not care if they got the title for fifty dollars, and the witness states that he afterwards saw such property of McCoy in possession of the Callaways.

In order to make out the case the counsel require us to

believe that this answer was not given to this question be-
cause it seems to answer as to the whole land, whereas the
question related to a part only, and consequently that the
proper question to which this answer was given, related to
the whole tract, and that a part of the testimony was omit-
ted in the record. Now had this been the case it
is to be considered that it was his duty before the cause was
argued to see that the record was complete, and if not, to
apply to this court to have it made so, and not tax the cred-
ulity of the court so far as to suppose that both the counsel
and clerk had neglected their duty; this duty too to see that
the record is complete is the more imperative on the coun-
sel as he claims to be benefited by the part alleged to be
omitted. It is in vain to spread out the testimony of a
cause on the bill of exceptions if we are required to suppose
for, the benefit of the appellant what he has been too idle
to preserve. But I consider the answer pertinent enough.
It alludes expressly to the land concerning which the ques-
tion was put (i e) the aforesaid land. But then it was pass-
ing strange that McCoy should be giving money to the pur-
chasers to pay for the part claimed by Truesdell, while he
was receiving money from the same persons. There is no
evidence that he was to give money to the Callaways. He
was to give them property and such property as might rea-
sonably be supposed to be very useful to them, the purchasers
of the land, and very troublesome to McCoy, who it abun-
dantly appears by evidence in the record, removed to dis-
tant parts, while it equally appears that the purchasers re-
sided, on the premises. The deposition of this witness was
taken two years after this conversation, and his memory
appears to be not very accurate; he states the price deman-
ded by McCoy for the land to be three times as much as it
appears by the deed of McCoy to the Callaways it was sold
for. If we reduce the price which he states that McCoy
said he was to give the purchasers for the river part claimed
by Truesdell in the same proportion we shall have the sum
of one hundred dollars, a very small sum indeed to com-
pensate the purchaser for the trouble of prosecuting a law
suit with so troublesome a man as Truesdell has shown him-

SEPT. TERM.
1840.

Truesdell
v
L. S. and D.
B. Callaway,
self on this record to be; off the record none of them are known to me. By seven witnesses evidence is given that McCoy is not to be believed on oath. Yet his testimony is coroborated by that of Caldwell and wife, as well as that of Turner. Truesdell furnishes himself testimony enough to satisfy me, that he sets up in this case the most unfounded pretensions to hold McCoys property, still more unfounded is his pretence to the right of compelling MCoy to keep open the way on the river. He states and perhaps proves that Owens accepted a deed with such provision, but offers no evidence to show any obligation on the part of McCoy to do the same or any understanding between McCoy and Owens on that subject. For the reasons above given I am of opinion that the Judgment of the circuit court ought to be affirmed, and Judge Napton also believing it ought to be affirmed, it is accordingly affirmed.