DEMETER *et al.*, *Appellants*, v. WILCOX.

Division Two, May 16, 1893.

1. **Vendor's Lien:** PAYMENT OF DEBT: VOLUNTEER. One cannot acquire a lien on land purchased by another by the voluntary and unauthorized payment of the purchase money therefor.

2. ———: ———: SUBROGATION. Nor can one by simply paying the debt due the vendor who holds a lien for the purchase money be subrogated to such vendor's lien.

3. ———: ———: PRIORITIES. Where, however, one advances money, at the request of the purchaser, to pay the debt, with the understanding and agreement that he is to have a mortgage to secure his advance, it being agreed that the mortgage is to be executed so soon as the money is paid and a deed is executed by the vendor, and in pursuance of this agreement the money is paid and the deed made and the mortgage executed and delivered to the loaner, such steps are one transaction, and the mortgage so given will take precedence of all other liens and incumbrances on the estate of the mortgagor.

*Appeal from Macon Circuit Court.*—HON. ANDREW ELLISON, Judge.

REVERSED AND REMANDED.

*Dysart & Mitchell* for appellants.

(1) The common law doctrine of vendor's liens is in force in this state, the same never having been changed or modified by statute. And it is conceded that the mere loaning of money to the vendee, which is used to pay the purchase money of land, or the voluntary and unauthorized payment of the same, does not establish a lien in favor of one so loaning or paying the money. *Truesdell v. Callaway*, 6 Mo. 605. (2) Had the latter deed of trust been made to the vendor, Railroad Company, instead of to the plaintiff furnishing the money, there would be no question of its priority and of its taking precedence over the Yale deed of trust. *Morris v. Pate*, 31 Mo. 315; *Linville v. Savage*, 58 Mo. 248; *Fontain v. Savings Institution*, 57 Mo. 552. (3) The question here is, does the same rule apply in favor of a third party who pays the money and takes a deed of trust from the vendee to secure the sum advanced to pay for the land. We confidently submit that it does, and cite a few of the great mass of authorities on the point. *Moring v. Dickerson*, 85 N. C. 466; *Kaiser v. Lembeck*, 55 Iowa, 244; *Laidley v. Aiken*, 45 N. W. Rep. (Iowa), 384, citing and approv-

ing *Kaiser v. Lembeck, supra*; *Bradley v. Byran*, 43 N. J. Eq. Rep., 396, and authorities cited by the learned reporter at the end of the case. 2 Pomeroy Equity Jurisprudence, sec. 725; *Cary v. Boyle*, 53 Wis. 574. (4) In this state a vendor's lien passes to the assignee by assignment of the note given for the purchase money, and, in such case, one who pays the purchase money to the vendor is subrogated to the lien. *Sloan v. Campbell*, 71 Mo. 387; Jones on Liens, sec. 1093. (5) The plaintiff's deed of trust having been taken from the grantee to secure the purchase money advanced by plaintiff upon the condition that he was to be so secured on the land, it prevails over all liens created or suffered by the grantee prior to the time he acquired the title and executed the deed of trust to plaintiff, including mortgage liens, judgment liens, mechanic's liens, dower and homestead rights. See authorities cited under III. point, and also, *Mitchell v. Butt*, 45 Ga. 162; *Blevens v. Rogers*, 32 Ark. 258; *Magee v. Magee*, 51 Ill. 500; *Curtis v. Root*, 20 Ill. 53; *Dwenger v. Branigan*, 95 Ind. 221; *Haywood v. Nooney*, 3 Barb. 643; *Mize v. Barnes*, 78 Ky. 506; *Bolles v. Carli*, 12 Minn. 113; *Jones v. Parker*, 51 Wis. 218; *Cary v. Boyle*, 53 Wis. 574 and 56 Wis. 145. (6) Of course this last rule would not apply as against the vendor himself. The latter's lien prevails over the lien of a third party who furnishes the money to make the first payment, without regard to priority of registration. *Rogers v. Tucker*, 94 Mo. 347; *Turk v. Funk*, 68 Mo. 18.

*R. S. Matthews* for respondent.

(1) Neither the grantor nor the grantee of the land in question are parties to this suit and are in no way interested in its result. The appellant, at the time he loaned his money to Needham, had no rights in the land to be protected by him. The railroad company

did not assign its lien to appellant, and did not agree
to assign the same. No equity or right of subro-
gation exist in favor of appellant. *Price v. Courtney*,
87 Mo. 387; *Wooldridge v. Scott*, 69 Mo. 609. (2) The
debt of a creditor which is paid with the money of a
third person without any agreement that the security
shall be assigned or kept on foot for the benefit of such
third person is extinguished by the payment and the
doctrine of subrogation will not apply, and a court of
equity will afford no relief. *Bunn v. Lindsay*, 95 Mo.
250, and cases cited; *Wade v. Beldmeir*, 40 Mo. 486;
*Wolf v. Walter*, 56 Mo. 292; *Sharp v. Collins*, 74 Mo.
266. (3) Equity does not admit the doctrine of equit-
able assignments in favor of him who pays off a mort-
gage. (4) A mere stranger, therefore, who furnishes
the money to pay off the balance of the purchase price
is a volunteer, and can never be an equitable assignee.
Pomeroy on Equity, sec. 1212, and cases cited; Sheldon
on Subrogations, sec. 3; *Johnson v. Goldsby*, 32 Mo.
App. 560; *Evans v. Halleck*, 83 Mo. 376; *Wilson v.
Brown*, 13 N. J. Eq. 277; *Wolf v. Walter*, 56 ¦Mo. 292.
(5) This case is nothing more than a suit to have estab-
lished and enforced a vendor's lien where there is none,
and no assignment by the vendor, and none thought of
at the time of the transaction. This case in another
form was before this court once before. See *Demeter
v. Walker*, 94 Mo. 88. (6) No vendor's lien can arise
when the vendor executes and delivers a conveyance to
the purchaser and the whole purchase money is paid to
vendor. *Pearl v. Harvey*, 70 Mo. 160, and cases cited.

BURGESS, J.—Suit in equity. The land in ques-
tion was owned by the Hannibal and St. Joseph
Railroad Company. In November, 1868, it sold
to one Web M. Rubey on time and gave him bond
for deed in payment of the purchase money. On the

sixteenth day of October, 1871, Rubey assigned said contract to Thomas G. Yale, who took possession of the land and improved it. And afterwards, on the fourteenth day of January, 1875, Yale and wife conveyed by deed ·twelve and one-half acres of land in Macon county to Needham, and at the same time Yale delivered said railroad contract to Needham, but without assignment; and on the same day, January 14, 1875, Needham gave Yale a deed of trust on the twelve and one-half. acres and on his equity in the forty-acre tract in controversy to secure the sum of $500, in four notes falling due in one, two, three and four years. Thereupon Needham took possession of the land in question, farmed it and made some improvements.

Needham also made several payments to the railroad company on the contract, and subsequently, prior to January, 1881, renewed the contract with the railroad company, whereby the old, or Rubey contract, was surrendered and a new one issued in its stead for the same land and for the balance of the purchase money remaining unpaid. This latter contract was issued by the railroad company to and in the name of Needham.

Needham made several payments to the company on this latter contract through its agents, Walker & Gilstrap, so that on or about January 11, 1881, and prior thereto, there remained unpaid and due the railroad company on said contract, for the purchase of said land, the sum of $231.80. Of this sum Needham paid $31.80. The balance of this sum, $200, was paid by plaintiff, E. J. Demeter. The money was paid by Demeter to W. G. Walker, the agent of the railroad company, for the company, and as the last payment on said land. This balance was paid upon the condition and the express understanding between Demeter, Needham and the agents of the railroad company, that

Demeter was to be secured on the land, when the deed was made by the company to Needham.

It seems that the method of securing Demeter on the land was largely left to Walker & Gilstrap. Anyway, this plan was adopted and carried out: The money was sent to the railroad company with request that the company execute a deed to Needham, the holder of the contract, Needham was then to execute his note and deed of trust on the land to Demeter.

The note and deed of trust were drawn by Gilstrap and bear date January 11, 1881, the same day the money was paid and receipted for, the plaintiff, Walker, being made trustee in the deed of trust. They were delivered to Demeter on the eighteenth day of January, 1881, and recorded the same day. When the money was paid it was understood that the deed for Needham would be returned in about ten days, at which time the note and deed of trust were to be delivered to Demeter. It does not clearly appear when this deed was executed and returned to Macon from Hannibal, but it bears date January 28, 1881, that is, the deed from the company to Needham, and the same was at the time duly recorded, some ten days after the filing of Demeter's deed of trust. The deed and deed of trust bear different dates, but this discrepancy, if one, is fully explained by the witness, Walker. They were intended to be parts of the same transaction. Gilstrap drew the note and deed of trust on the day the money was paid in anticipation of the deed. The company did not make the deed on the day the money was received, but held it until conveyance day. The deed was due on the day of payment, but the company only made deeds once or twice a month.

Long after the plaintiff's deed of trust was recorded, to-wit, on the third of March, 1883, the land in question was sold under the deed of trust from Needham to

Yale, and the defendant, Wilcox, became the purchaser at the price of $650, as he testifies, and received a trustee's deed, having no other claim, right or title. At the sale of the property, under the Yale deed of trust, and before he bid on and purchased the same, the defendant, Wilcox, was notified and warned of plaintiff's deed of trust, and for what purpose it was given, and of plaintiff's claim, right, title and interest in and to the property, fully as set out in plaintiff's petition. This notice was given by plaintiff's agent and attorney on the day of sale, before the bidding commenced. This was admitted by the defendant in his cross-examination as a witness in the cause.

The plaintiff prays the court to adjudge as between the rights and equities of the Yale and Demeter deeds of trust, and to declare and adjudge the lien of plaintiff prior and superior to the deed of trust under which the defendant purchased and holds, and if not paid, that the premises be sold for the payment and satisfaction thereof. There is scarcely any dispute about, or conflict in, the evidence; none at all as to the deeds, deeds of trust and other documentary evidence nor of the contents and filing of the same for record. The court decided the law of the case against the plaintiffs and rendered judgment for the defendant, to reverse which the plaintiffs bring the case to this court by appeal, after an unsuccessful motion for new trial and in arrest.

The vital question in this case is as to which one of the two deeds of trust, that of the plaintiff or the one under which defendant claims title has the prior equity. It is well settled law that a person cannot acquire a lien upon land purchased by another by the voluntary and unauthorized payment of the purchase money therefor. *Truesdell v. Callaway*, 6 Mo. 605. Nor can he by simply paying the debt due the vendor

who has a lien for the purchase money be subrogated to such vendor's lien. *Nichol v. Dunn*, 25 Ark. 129. Something more is required.

If, however, a part or all of the purchase money remains unpaid and a person advances the money with which to liquidate the debt at the request of the debtor, with the understanding and agreement with him that he is to have a mortgage on the land to secure him in the payment of the purchase money, the mortgage to be executed as soon as the money is paid and a deed executed by the vendor, and in pursuance of this agreement the money is paid, the deed made and the mortgage executed and delivered to the lender, then it becomes one and the same transaction, and the mortgage thus given will take precedence of all other liens or incumbrances.

It is very evident from the evidence in this case that the deed by the railroad company to Needham, and the mortgage by him to Demeter, were intended by the parties to be concurrent acts and should therefore be construed as one act, although there was a few days difference in their respective dates. But this is explained by the witness Walker, who had been agent of the railroad company and who says that the note and mortgage were written and signed the day upon which the money was loaned, and sent to the company in payment for the land, but the custom of the company was not to execute deeds oftener than once or twice a month, and this he states accounts for the discrepancy in the dates, which in this case and under the facts and circumstances are not material.

In the case of *Moring v. Dickerson*, 85 N. C. 466, it is held, that, "Where a mortgage on land is given to one who has advanced the purchase money therefor, and executed at the same time with the deed which con-

fers title on the mortgagor, the making of the two deeds is considered but one transaction; the seizin of the mortgagor is but an instantaneous one, to which prior incumbrances on his estate will not attach; but the mortgage to secure the purchase money will take precedence of all other liens or incumbrances." *Curtis v. Root*, 20 Ill. 53; *Haywood v. Nooney*, 3 Barb. 643; *Boles v. Carli*, 12 Minn. 113; *Bradley v. Byran*, 43 N. J. Eq. 396.

So it was held in the case of *Kaiser v. Lembeck*, 55 Iowa, 244; that a mortgage given to a third person who furnishes the money with which the property is purchased is entitled to the same protection as though it were executed to the vendor.

It has also been held that if a third person advances the purchase money, and the purchaser, at the same time the deed is given to him, executes a mortgage to such third person on the same land, to secure the money so advanced, such mortgage is entitled to the same preference over a prior judgment against the purchaser on the land as the vendor himself would have had, if the mortgage had been given directly to him. 2 Pomeroy's Equity Jurisprudence, sec. 725; *Thomas v. Bridges*, 73 Mo. 530; *Carey v. Boyle*, 53 Wis. 574. In some of the states such is the rule as provided by statute.

It has also been held that a mortgage given to secure the payment of the purchase money of land, given at the same time with the deed of conveyance, or in pursuance of agreement as a part of the same transaction although not executed by the wife, takes precedence over her dower right in the same land. 2 Pomeroy's Equity Jurisprudence, sec. 725, and authorities cited. This right is perhaps looked upon with as much or more favor, and regarded with more jealousy,

by the law and the courts than any other rights or interest in landed property.

The lien of the railroad company passed to and vested in the plaintiff just as if the company had deeded it to Needham and he had then executed a mortgage to it to secure the payment of the purchase money, and the company had afterwards assigned the mortgage to plaintiff.

The authorities cited by counsel for defendant do not sustain his contention and are not in conflict with the views herein expressed. In the case of *Wooldridge v. Scott*, 69 Mo. 669, the contract was not executed, was verbal, and the defense of the statute of frauds was successfully interposed as a defense. In fact none of them are bottomed on facts like the case in hand.

At the time Needham gave Yale the deed of trust to secure him in the payment of the $500, he only had an equity in the land and was holding the same under a contract of purchase from the railroad company, to whom he owed a part of the purchase money. The defendant purchased nothing more than the interest which Needham had in the land at the time of the execution of the Yale mortgage. Demeter did nothing to impair the rights or interest of Yale, and only advanced the balance of the purchase money at the earnest solicitation of Needham, and succeeded to the rights and lien of the vendor by contract. He was not a mere volunteer in the payment of the money, to whom the law would afford no relief. Even though plaintiff should be held to have the prior equity, defendant loses nothing by reason thereof, for at the time the Yale deed of trust under which he claims title was executed, the money which plaintiff advanced was unpaid and was a prior lien on the land to this and all other deeds of trust, and which he would have

been required to pay before obtaining a deed from the railroad company.

We are clearly of the opinion that plaintiff has the prior equity. The cause is reversed and remanded, to be tried in conformity with this opinion. All concur.